Case No. 24-1390

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ANTHONY BAIR,
Plaintiff-Appellant,

v.

CRYSTAL GLASS, INC.,
Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

———————————

BRIEF FOR PLAINTIFF-APPELLANT
Oral Argument Requested

———————————

MATTHEW J. CLARK (P76690)
GREGORY, MOORE, BROOKS,
CLARK & HELTON, P.C.
Attorneys for Plaintiff-Appellant
28 W. Adams Ave., Ste. 300
Detroit, MI 48226
(313) 964-5600
matt@unionlaw.net

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-1390            Case Name: Anthony Bair v. Crystal Glass, Inc.

Name of counsel: Matthew Clark

Pursuant to 6th Cir. R. 26.1, Anthony Bair
                                          *Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on _____ June 26, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Matthew Clark
Gregory, Moore, Brooks, Clark &
Helton, P.C.

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

## **TABLE OF CONTENTS**

Disclosure of Corporate Affiliations and Financial Interest................................................ii

Table Of Contents................................................................................................................iii

Table Of Authorities.............................................................................................................v

Statement in Support of Oral Argument..............................................................................1

Statement of Jurisdiction......................................................................................................1

Statement of the Issues.........................................................................................................1

Statement of the Case...........................................................................................................2

Statement of Facts................................................................................................................2

      A. Bair's Disability and Layoff....................................................................................2

      B. Bair's Surgery and Non-Reinstatement to Crystal Glass......................................5

      C. Crystal Glass was Hiring Glaziers while Telling Bair Reinstatement was Unavailable...............................................................................................................7

      D. Crystal Glass Denied Bair Medical Leave as a Reasonable Accommodation.9

Summary of the Argument..................................................................................................12

Argument............................................................................................................................13

      A. Standard of Review..............................................................................................13

      B. Crystal Glass Failed to Provide Unpaid Medical Leave as a Reasonable Accommodation......................................................................................................13

            1. The Trial Court Improperly Ruled that Bair Must Show he Suffered an "Adverse Employment Action" ...........................................................14

            2. Unpaid Leave is a Reasonable Accommodation under the ADA........16

3. Bair Requested Leave as a Reasonable Accommodation......................20

4. Crystal Glass Failed to Grant Bair's Reasonable Accommodation and Failed to Engage in the Interactive Process.................................................22

C. Crystal Glass Discriminated Against Bair.............................................27

D. Crystal Glass Retaliated Against Bair..................................................29

Conclusion.........................................................................................................32

Certificate of Compliance.................................................................................34

Certificate of Service.........................................................................................34

Designation of Relevant District Court Documents........................................35

# <u>TABLE OF AUTHORITIES</u>

## STATUTES AND REGULATIONS

28 U.S.C. § 1291 ................................................................................ 1
28 U.S.C. § 1331 ................................................................................ 1
42 U.S.C § 12203 ............................................................................ 29
42 U.S.C. 12111 .............................................................................. 22
42 U.S.C. § 12111 ........................................................................... 18
42 U.S.C. § 12112 ................................................................... 13, 27

M.C.L. 421.48 ................................................................................. 20

29 C.F.R. § 825.702 ....................................................................... 19
29 C.F.R. § 1630.2 ................................................................... 16, 22
29 C.F.R. § 1630.12 ....................................................................... 29
29 C.F.R. App. § 1630 ................................................................... 17

## CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ............................ 13
*Bateman v. Project Hospitality, Inc*, 2009 U.S. Dist. LEXIS 92411 (EDNY, Sep. 30, 2009)  26
*Beasley v. O'Reilly Auto Parts*, 69 F.4th 744 (11th Cir. 2023) ........... 15
*Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621 (7th Cir. 2002) ......... 31
*Bennett v. Hurley Med. Ctr.*, 2023 U.S. Dist. LEXIS 9399 (E.D. Mich., Jan. 19, 2023)  24
*Blizzard v. Marion Tech. College*, 698 F.3d 275 (6th Cir. 2012) ......... 30
*Brenneman v. Medcentral Health Sys.*, 366 F.2d 412 (6th Cir. 2004) ... 25
*Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775 (6th Cir. 1998) ......... 17, 19, 29
*Cleveland v. Federal Express Corp.*, 83 Fed. App'x 74 (6th Cir. 2003) ......... 17, 19
*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) ............... 20
*Conetta v. National Hair Care Ctrs., Inc.*, 236 F.3d 67 (1st Cir. 2001) ............. 31
*Exby-Stolley v. Bd. of Cty. Commrs.*, 979 F.3d 784 (10th Cir.2020) (en banc) .......... 14, 15
*George v. Util. Trailers of Indianapolis, Inc.*,
     2014 U.S. Dist. LEXIS 154860 (S.D. Ind., Oct. 31, 2014) ................. 26
*Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149 (9th Cir. 1982) ............. 31
*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) ................. 28
*Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104 (6th Cir. 2009) .................... 28
*Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) ............ 30
*King v. Steward Trumbull Mem. Hosp., Inc.*, 30 F.4th 551, 564-568 (6th Cir. 2022)  21, 22, 25
*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 & fn. 2 (6th Cir. 2007)  15, 14-15, 23, 27
*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) ...................... 30

*Moldowan v. City of Warren*, 578 F3d 351 (6th Cir. 2009)  ................................................. 13

*Moody v. MidMichigan Med Ctr-Midland*,
    2022 U.S. Dist. LEXIS 130822 (E.D. Mich., July 22, 2022)  ..................................... 28

*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024) ............................................ 28, 29, 30

*Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539 (6th Cir. 2008)  ......................... 22

*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521 (6th Cir. 2012)  ........................ 13

*Norris v. Allied-Sysco Food Services, Inc.*, 948 F. Supp. 1418 (N.D. Cal. 1996) ........... 18, 19

*O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248 (10th Cir. 2001)  ..................................... 31

*Penny v. United Parcel Serv.*, 128 F.3d 408 (6th Cir. 1997)  ......................................... 14

*Ricco v. United States Postal Service*, EEOC Appeal No. 07A10007 (2002)  ..................... 23

*Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014)  ...................................... 23, 26

*Sauers v. Salt Lake Cty.*, 1 F.3d 1122 (10th Cir. 1993)  ..................................... 31

*Shupe v. Rocket Cos.*, 660 F. Supp. 3d 647 (E.D. Mich. 2023)  ..................................... 16

*Smith v. Ameritech*, 129 F.3d 857 (6th Cir. 1997)  ......................................... 15

*Terre v. Hopson*, 708 F. App'x 221 (6th Cir. 2017)  .......................................... 29

*Thompson v. Fresh Prods.*, 985 F.3d 509 (6th Cir. 2021)  ............................. 14, 15

*White v. Honda of America Mfg., Inc.*, 191 F. Supp. 2d 933 (S.D. Ohio 2002)  ......... 17, 19

*Whitfield v. Tennessee*, 639 F.3d 253 (6th Cir. 2011)  ........................................... 27

*Wyatt v. Nissan North America, Inc.*, 999 F3d 400 (6th Cir. 2021)  .................................... 29

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Anthony Bair requests oral argument. The Trial Court reversed and deconstructed many basic tenets of the Americans with Disabilities Act ("ADA"). Oral argument would benefit the Court in ruling on this important matter.

## STATEMENT OF JURISDICTION

The U.S. District Court for the Eastern District of Michigan had subject matter jurisdiction over Plaintiff-Appellant's ADA claims under 28 U.S.C. § 1331. On March 31, 2024, the District Court entered a final Opinion, Order, and Judgment dismissing Plaintiff's case. R. 17 and 18. On April 29, 2024, Plaintiff-Appellant appealed. R. 19. Appellate jurisdiction is appropriate under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1) The Trial Court improperly ruled that Plaintiff Anthony Bair must show he suffered an "adverse employment action" to show Defendant Crystal Glass failed to reasonably accommodate his disability under the ADA.

2) Under the ADA, Crystal Glass unlawfully denied Anthony Bair unpaid time off as a reasonable accommodation to recover from his surgery.

3) Under the ADA, Crystal Glass unlawfully discriminated against Anthony Bair.

4) Under the ADA, Crystal Glass unlawfully retaliated against Anthony Bair.

## STATEMENT OF THE CASE

After fulfilling administrative prerequisites before the Equal Employment Opportunity Commission, Plaintiff Anthony Bair sued Crystal Glass on December 28, 2021 for a denial of reasonable accommodation, disability discrimination, and retaliation under the Americans with Disabilities Act (ADA). Complaint, R. 1. While Plaintiff included a count in his Complaint alleging violation of the Employee Right to Know Act, the parties stipulated to dismissal of that count on May 28, 2023. R. 10. On May 30, 2023, Defendant filed a Summary Judgment, with Plaintiff filing a Response on April 20, 2023, and Defendant filing a Reply on May 11, 2023. R. 11, 14, and 16. On March 31, 2024, without a hearing for oral argument, the District Court entered an Opinion and Order and Judgment granting Crystal Glass' Motion for Summary Judgment, and dismissing Bair's case. R. 17 and 18.

## STATEMENT OF FACTS

### A. Bair's Disability and Layoff

Anthony Bair worked as a glazier (glass construction worker) for Crystal Glass in 2014-2015, 2016-2017, and again from November 22, 2019 to June 4, 2020. Employment Sheet, R. 11-5, Page ID # 242. The work of a glazier is physically demanding, requiring climbing, lifting, and construction. Solomon Transcript, R. 11-4, Page ID # 200, tr. p. 74. In May 2020, Bair suffered a flare up of avascular necrosis in his hip, a degenerative bone condition. Bair-Solomon Text, R. 11-7, Page ID # 292; Bair-Gaines Texts, R. 11-8, Page ID # 294-295; Bair Medical Records, R. 14-1, Page

Id # 353-354. On May 19, 2020, Bair texted Paul Gaines, Crystal Glass' scheduler, to notify him of this condition. Bair-Solomon Text, R. 11-7, Page ID # 292. In the same message, he informed Gaines, "I'll know more [from the doctor] on Thursday but I just can[']t do climbing scaffolding that messed me up the other day. I'm good to work I'm just asking you to not kill me lol." Bair-Gaines Texts, R. 11-8, Page ID # 294-295. Gaines responded, "I will do my best to have you avoid scaffold. But also realize this won't always be on my mind and I don't always know exactly what's going on at the jobs so you'll need to speak up if you can't do something." Id. Later that day, Bair texted Crystal Glass owner James Solomon, "I'm in a lot of pain […]. I can work but some days are terrible." Bair-Solomon Text, R. 11-7, Page ID # 292.

For the next several weeks, Bair worked through the pain the best he could while minimizing climbing of ladders and scaffolding. Bair-Solomon Texts, R. 14-2, Page ID # 357. Gaines, who did not work in the field alongside Bair, testified that "I'm not out there holding these guys' hands" and left it to Bair to attempt to minimize physically strenuous work. Gaines Transcript, r. 11-6, Page ID # 251, 260, tr. pp. 25, 61-2. Bair's field supervisors were not informed of any need to limit Bair to restricted duty. Id., Page ID # 260, 262, tr. pp. 61-2, 68; Solomon Transcript, R. 11-4, Page ID # 200-201, 210, tr. pp. 75-7, 113.

On May 31, Bair texted Solomon that he had emergency hip resurfacing surgery scheduled June 16, which needed to happen quickly before his bone deteriorated severely enough to require a full hip replacement. Bair-Solomon Texts, R.

14-2, Page ID # 356. He texted, "I need to speak with you about going on short term disability. This procedure is not so bad and [the doctor] said I should be down for 6 weeks with returning to light duty after that." Id. Solomon responded that Crystal Glass had no short-term disability policy. Id., Page ID # 356-357. Solomon asked Bair if he was "planning to work the next two weeks [before his surgery]" and Bair responded, "Yes. Absolutely[.]" Id., Page ID # 356. On June 1, Bair texted Solomon pictures of his medical report and asked (Id. Page ID # 357):

> Is there anything you can do to help me so I don[']t lose everything for this? Maybe later [sic] [lay] me off the week of the surgery? I can keep working to try and save it but if I injure it further I'm screwed for months not weeks. Please help me I need to get better and back to work. I'm in constant pain.

On June 4, Solomon texted Bair, "Paul says he doesn't have anymore light duty work for you. So we are going to go ahead and lay you off today." Text messages, R. 14-2 Page ID # 359. Although this layoff was slightly earlier than Bair expected,[1] he responded, "Ok. Sorry James I've been babying it and the minimal up and down on the ladder threw it all out again. It makes me so nauseous just walking on it." Id., Page ID # 359.

Bair made his request to be "laid off" for his surgery in the early phases of the COVID-19 pandemic, which already caused Crystal Glass operational shutdowns and

---

[1] Bair initially told Solomon he could work until just before surgery. Text messages, R. 14-2 Page ID # 356. However, as Bair texted Gaines on June 2, his doctor instructed him to self-isolate before his surgery during the early phases of the COVID-19 pandemic. Pl. Ex. 11-11, Page ID # 303. Nevertheless, Bair expected to work later than his June 4 layoff date. Id.

startups, accompanied by mass layoffs and reinstatements. Gaines Transcript, r. 11-6, Page ID # 257. On March 27, 2020, Crystal Glass laid off its entire 13-member ground workforce, and had just reinstated Bair and all but two of its glaziers on May 11. Id.; Layoff list, R. 11-14, Page ID # 312. Several days after Bair was laid off on June 4, Crystal Glass began laying off the entire the ground workforce – two employees laid off on June 9, another on June 10, another on June 16, four on June 19, another on June 23, and the last employee on July 3. R. 11-14, Page ID # 312. In July and August, Crystal Glass reinstated all the June-July laid off employees other than Bair who wanted to return, starting the first reinstatement on July 7, 2020.[2] Id.

### B. Bair's Surgery and Non-Reinstatement to Crystal Glass

Bair underwent surgery on June 18. Surgery, R. 14-3, Page ID # 363-376. The surgery went well ("Prognosis: Excellent") and Bair's doctor recommended physical therapy. Id., Bates p. 398. Bair expected full recovery in August 2020. Solomon Transcript, R. 11-4, Page ID # 204, tr. p. 90. On June 27, Bair texted Solomon a picture of his surgical incision with his message "progress." Ex. 2, Page ID # 359.

In response to Bair's "progress" text, Solomon texted Bair on June 30, "We are slow now and probably won't be able to hire you back." Ex. 2, Page ID # 359. Bair responded, "[Hire] me back as in ever?" Id. Solomon responded, "Honestly it's not

---

[2] Other than Bair, the only glaziers laid off in June and July who didn't return – Patrick Dean, Logan Rose, and Brent Sturgill – voluntarily declined when Crystal Glass asked them. Layoff List, R. 11-14, Page ID # 312; Solomon Transcript, R. 4, Page ID # 206, tr. pp. 98-9.

likely." Bair pleaded, "That's not right. All I need is a few weeks to heal james please don't do this to me I'm going to lose everything I'm barely hanging on [sic]." Id. Solomon claimed in response, "We have several guys laid off rn [right now]. We don't know when it's going to pick back up if ever." Id. Because this interaction occurred on June 30 – the last day of the month – Bair's company health insurance ended that day. Id.; Solomon Transcript, R. 11-4, Page ID # 204, tr. pp. 88-9. In his dire and newly uninsured situation, Bair could not afford physical therapy that would have helped him heal. Bair Transcript, R. 11-3, Page ID # 134, tr. pp. 140-41, 182.

In describing this interaction, Solomon claims Bair "was never fired." Solomon Transcript, R. 11-4, Page ID # 208, tr. p. 105. Solomon claimed, "This one little text message saying that it's not likely that we're going to have work, he takes it totally the wrong way and brings this whole lawsuit against us." Id., Page ID # 204, tr. p. 91. To Bair, the message was more than "one little text." Solomon's statement that he "probably won't be able to hire you back" – which he reiterated when Bair texted, "[Hire] me back as in ever?" – made clear to Bair that they did not intend to reinstate him. Bair-Solomon Texts, R. 14-2, Page ID # 359; Bair Transcript, R. 11-3, Page ID # 136, tr. p. 149. Nowhere did Solomon's texts mention any reasonable prospect for returning to work. Bair-Solomon Texts, R. 14-2, Page ID # 359. He did not, for example, instruct Bair to present a doctor's note or in any way notify him when he was capable of working so they could determine whether they could reinstate him. Id.

Solomon reiterated this position in a lengthy July 8 email to Bair, which claimed, "our work has slowed down significantly due to a slow reopening and we likely won't have work for you anytime in the foreseeable future." Solomon Email, R. 14-4, Page ID # 379. This email, more detailed and deliberative than Solomon's June 30 "little text," again presented no prospects of reinstatement. Id. While Solomon claims he verbally instructed Bair in early June to show a doctor's note when he was able to work, this alleged conversation took place long before Solomon's text and email to Bair that mentioned no doctor's note. Solomon Transcript, R. 11-4, Page ID # 202, tr. p. 83. When Bair recovered four months after surgery, he didn't think it would make a difference to present a doctor's note because he believed Crystal Glass already terminated him. Bair Transcript, R. 11-3, Page ID # 136, tr. p. 149.

Bair healed from his surgery in October 2020. Id., Page ID # 145, tr. p. 182. He re-entered the work force six months after his surgery, working a heavy lifting construction job at Silver Line Contracting in December 2020 fabricating metal panels for 50-60 hours per week. Id., Page ID # 145, tr. p. 184. He later returned as a glazier for a different company, Edwards Glass, in August 2021, doing the same type of work he did at Crystal Glass. Id., Page ID # 145, tr. p. 185.

### C. Crystal Glass was Hiring Glaziers while Telling Bair Reinstatement was Unavailable

Crystal Glass attempted to justify its claim that "[w]e are slow now and probably won't be able to hire you back" because "[w]e don't know when it's going to

pick back up if ever." Ex. 2, Page ID # 359. Crystal Glass' own employee records disprove this narrative. Layoff List, R. 11-14, Page ID # 312. Crystal Glass began reinstating its laid off employees on **July 7 – the day before** Solomon's email to Bair claiming that "our work has slowed down significantly due to a slow reopening and we likely won't have work for you anytime in the foreseeable future."[3] Id.; Solomon Email, R. 14-4, Page ID # 379. The day before this email, Crystal Glass already reinstated its laid off glazier, Mike Griffey. Layoff List, R. 11-14, Page ID # 312. On July 13 – only five days after Solomon's email to Bair – Crystal Glass reinstated another laid off glazier, Robert Washington. Id. On July 20, Crystal Glass reinstated four more laid off glaziers, and reinstated another on August 3. Id. Other than Bair, the only glaziers laid off in June and July who did not return to work – Patrick Dean, Logan Rose, and Brent Sturgill – voluntarily declined to return when Crystal Glass asked them. Id.; Solomon Transcript, R. 11-4, Page ID # 206, tr. pp. 98-9.

After running out of laid off glaziers (other than Bair) to reinstate, Crystal Glass began hiring new employees. On September 14, 2020, it hired new fabricator Roger Grinage. Employee List, R. 14-5, Page ID # 382. On September 15, it hired new glazier Nicholas Lacombe. Id., CGI p. 202. On November 23, it hired new glazier Jason Nardozzi. Id. On March 15, 2021, it hired two new glaziers, Christian

---

[3] On March 27, 2020, in the beginning of the COVID-19 pandemic, Crystal Glass laid off 13 glaziers, including Bair. Layoff List, R. 11-14, Page ID # 312. On May 11, it reinstated 11 of those glaziers, again including Bair. Id. Between June 4 (starting with Bair's layoff) and July 3, it laid off those 11 employees. Id.

Orozco and Jose Orozco-Torres. Id., CGI pp. 202-03. On August 31, it hired new glazier Barry Connor. Id., CGI p. 202 On December 27, it hired new glazier Cayman Rose. Id. Crystal Glass' nearly $1.5 million federal subsidy from forgiven COVID-19 Paycheck Protection Program loans – at least 75 percent of which must be used to keep employees on the payroll[4] – show an increase in the company's reported jobs – 58 on the company's application approved April 20, 2020 and 61 on the company's application approved January 28, 2021. Pl. Ex. 6. In 2022, Crystal Glass hired at least 13 new glaziers.[5] Ex. 5. However, from Bair's June 30, 2020 termination to the present, Crystal Glass never contacted Bair to see if he could return to work. Solomon Transcript, R. 11-4, Page ID # 207, tr. p. 102.

### D. Crystal Glass Denied Bair Medical Leave as a Reasonable Accommodation

The legal argument section of this Brief will show how a reasonable period of unpaid medical leave is a reasonable accommodation under the ADA. Crystal Glass admits it never considered Bair for such an accommodation. Solomon Transcript, R. 11-4, Page ID # 210-211, tr. pp. 115, 120. Crystal Glass never even knew medical leave could be a reasonable accommodation under the ADA. Id., Page ID # 211, tr. pp. 117-18; Gaines Transcript, r. 11-6, Page ID # 266, tr. pp. 85-6. In his deposition, Solomon testified (Solomon Transcript, R. 11-4, Page ID # 211, tr. pp. 117-18):

---

[4] US Small Business Administration Paycheck Protection Program Borrower Application Form, available at https://www.sba.gov/sites/default/files/2020-04/PPP-Borrower-Application-Form-Fillable.pdf (last accessed April 15, 2023).

[5] Crystal Glass provided its employee list on November 28, 2022 and may have hired additional glaziers since then.

Q: Are you aware whether time off can be a reasonable accommodation, time off to recover from an injury or medical condition?

A: Like paid time off?

Q: Any time off, paid or unpaid? Are you aware whether that could be a reasonable accommodation?

A: I guess I wasn't aware. At the time, I was not aware of that.

Neither Solomon nor Gaines – the only Crystal Glass representatives who made any employment determinations relating to Bair's medical condition[6] – had ever before handled any employee ADA reasonable accommodation request. Id., Page ID # 212, tr. p. 123; Gaines Transcript, r. 11-6, Page ID # 266, tr. pp. 85-6. Nor had they ever handled the similar issue of employee leave under the Family and Medical Leave Act (FMLA). Solomon Transcript, R. 11-4, Page ID # 213, tr. p. 124; Gaines Transcript, r. 11-6, Page ID # 266, tr. p. 86. Crystal Glass had no knowledge of its responsibility under the ADA to engage in a good faith interactive process with Bair to determine a reasonable accommodation. Solomon Transcript, R. 11-4, Page ID # 211, tr. p. 119. Crystal Glass had no human resources department, nor did management undergo any ADA reasonable accommodation training. Solomon Transcript, R. 11-4, Page ID # 186, tr. p. 17. Crystal Glass did not consult with an attorney over its ADA obligations before telling Bair they wouldn't likely reinstate him. Id., Page ID # 211, tr. p. 117.

---

[6] Solomon Transcript, R. 11-4, Page ID # 212, tr. p. 120.

Crystal Glass further admitted it refused to consider Bair for employment after his medical leave **because of** his opposition to the denial of medical leave time. When Solomon unexpectedly told Bair he probably wouldn't be reinstated, Bair responded with the understandable shock of someone in economic hardship recovering from a serious surgery whose employment was suddenly taken away from him. On July 3, he texted Solomon, "All I ever wanted was to get better and make an honest paycheck," and noted how he was talking with attorneys about the prospects of legal action, and that his attorney "finds a very valid case for unlawful termination[.]" Bair-Solomon Texts, R. 14-2, Page ID # 361; Bair-Solomon Text, R. 11-16, Page ID # 316-318. According to Solomon, "From his reaction, I assumed he wouldn't want to work here." Solomon Transcript, R. 11-4, Page ID # 208, tr. p. 106. Solomon told Gaines, and when Crystal Glass began reinstating and hiring employees, they skipped over Bair – not over the lack of a doctor's note, but because Solomon disapproved of Bair's opposition to being told he probably wouldn't have a job. Gaines Transcript, r. 11-6., Page ID # 265-266, tr. pp. 79-85. According to Gaines, "at the point where that [Solomon's July 8] email was sent, things had kind of taken a hostile turn, so I think it was a different set of eyes on the situation when it came to Anthony specifically." Id., Page ID # 265, tr. p. 79. Gaines further testified that, "from the point where James sent that email to Anthony, he fell off my radar." Id., Page ID # 266, tr. p. 85.

## SUMMARY OF THE ARGUMENT

Anthony Bair – a disabled glazier who suffered from avascular necrosis and needed time off from his job at Crystal Glass to undergo and recover from hip surgery – was unlawfully denied a short period of unpaid time off as a reasonable accommodation under the ADA. The ADA recognizes such time off as a reasonable accommodation. While Crystal Glass initially appeared to grant Bair's time off request, the company effectively terminated him several weeks later as he was recovering from his surgery by telling him, without warning and without adequate justification, that he likely had no future with the company. Crystal Glass gave no reasonable indication that it would reconsider Bair for employment when he fully recovered. While the company claimed Bair likely had no future with the company because business was slow and they had no room for new glaziers, they were simultaneously reinstating and then hiring other glaziers at this time, and in the coming weeks and months.

The Trial Court dismissed Bair's case on summary judgment, finding that Crystal Glass was not required to provide Bair with unpaid time off as a reasonable accommodation. The Trial Court improperly claimed Bair was required to show he suffered an "adverse employment action," although this is a misstatement of law, as no such requirement exists to show a failure to accommodate under the ADA. Although Bair let Crystal Glass know of his disability and the need for time off, Crystal Glass failed to engage in the ADA-required interactive process to grant and maintain his reasonable accommodation. Crystal Glass also discriminated and

retaliated against Bair due to his disability, and his request for a reasonable accommodation, by effectively terminating him, or giving him the reasonable impression that he was terminated, rather than allowing him to continue on unpaid medical leave.

## ARGUMENT

### A. STANDARD OF REVIEW

For all issues raised in this appeal, the Court of Appeals "review[s] the district court's denial of summary judgment de novo, using the same Rule 56(c) standard as the district court." *Moldowan v. City of Warren*, 578 F3d 351, 373 (6th Cir. 2009). "Summary judgment is proper where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 526 (6th Cir. 2012). Summary Judgment must be denied if, drawing all reasonable inferences in favor of the nonmoving party, "the evidence presents a sufficient disagreement to require submission to a jury[.]" *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Summary judgment is appropriate only when the evidence "is so one-sided that one party must prevail as a matter of law." *Id.*

### B. CRYSTAL GLASS FAILED TO PROVIDE UNPAID MEDICAL LEAVE AS A REASONABLE ACCOMMODATION

Failure to reasonably accommodate is a form of disability discrimination, but holds distinct elements from a general disability discrimination claim. 42 U.S.C. § 12112(b)(5). Bair must show he was (1) disabled; (2) qualified for the job with or

without reasonable accommodation; and (3) denied a reasonable accommodation. *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997).

### 1. The Trial Court Improperly Ruled that Bair Must Show he Suffered an "Adverse Employment Action"

Granting summary judgment for Crystal Glass, the Trial Court departed from the three above elements and improperly imposed an extra requirement that Bair must show he suffered an "adverse employment action" to prevail on his ADA failure to accommodate claim. MSJ, R. 17, Page ID # 411. The Trial Court claimed "all three claims [disability discrimination, retaliation, *and failure to accommodate*] lack an adverse action" and ruled that "summary judgment must be granted in Crystal Glass's favor with respect to all three claims because Bair cannot show that he suffered an adverse employment action." Id., Page ID # 411-412 (quotation marks removed). In reality, Bair must show he suffered an adverse employment action to prevail on his discrimination and retaliation claims, but **not** his failure to accommodate claim. The Trial Court inaccurately cites *Thompson v. Fresh Prods.* in support of its erroneous claim, when *Thompson* actually offers no such support. 985 F.3d 509, 525 (6th Cir. 2021). Instead, *Thompson* applied the adverse employment action element to a general discrimination claim, not the plaintiff's failure to accommodate claim. *Id.* at 525-526.

Courts have rejected the Trial Court's conclusion that a plaintiff must show an adverse employment action to prevail on a failure to accommodate claim. *Exby-Stolley v. Bd. of Cty. Commrs.*, 979 F.3d 784, 788 (10th Cir.2020) (en banc); *Kleiber v. Honda of*

*Am. Mfg., Inc.*, 485 F.3d 862, 868 & fn. 2 (6th Cir. 2007);[7] *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997).[8] In *Exby-Stolley*, the Tenth Circuit ruled en banc that "**an adverse employment action is not a requisite element of an ADA failure-to-accommodate claim.**" 979 F.3d at 788 (emphasis added). It reached this conclusion after conducting an exhaustive review of all circuits, including the Sixth Circuit cases *Kleiber* and *Smith* cited above, and determined that "*none* of our sister circuits has regularly incorporated an adverse-employment-action requirement into an ADA failure-to-accommodate claim." 979 F.3d at 810 (emphasis original).[9] This exhaustive survey contrasts with the Trial Court's single cited "supporting" case *Thompson*, which does not actually support the Trial Court's conclusion. 985 F.3d at 525-526. Also noteworthy is that the Trial Court reached its conclusion sua sponte; Crystal Glass did not even argue that Bair must prove an adverse employment action to prevail on his failure to accommodate claim. MSJ, R. 11, Page ID # 71, 83; MSJ Reply, R. 16, Page ID # 395, 397 (only referencing adverse employment actions for Bair's discrimination and retaliation claims).

---

[7] The *Kleiber* court distinguished between "claims premised upon an employer's failure to offer a reasonable accommodation" and "claims premised upon an adverse employment decision." 485 F.3d at 868 & fn. 2.

[8] The *Smith* court held that, for an ADA discrimination claim, "plaintiff must prove […] that defendants *either* refused to make a reasonable accommodation for his disability *or* made an adverse employment decision regarding him solely because of his disability." 129 F.3d at 866 (emphases added).

[9] Following *Exby-Stolley*, the 11th Circuit has departed from other circuits to require an "adverse employment decision" in failure to accommodate claims. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 746 (11th Cir. 2023). Neither the Sixth Circuit nor others have followed this outlier.

Improperly imposing this adverse employment action requirement, the Trial Court found Bair couldn't show he suffered the adverse employment action of being terminated, and dismissed the failure to accommodate claim without further analysis of the actual elements of the claim. MSJ Opinion, R. 17, Page ID # 418, fn. 6. The Trial Court concluded, "Because the lack of an adverse action is dispositive, this Court need not reach the Parties' other arguments." Id. (internal citation omitted).[10] While improperly focusing on an adverse employment action, the Trial Court overlooked the most important inquiry – whether Crystal Glass failed to engage in an interactive process as required under the ADA.

### 2. Unpaid Leave is a Reasonable Accommodation under the ADA

For the first actual element of Bair's failure to accommodate claim, neither Crystal Glass nor the Court contests that Bair's avascular necrosis, which caused him serious pain and required surgery and recovery, meets the definition of a disability as a physical impairment that substantially limits one or more of his life activities under 29 C.F.R. § 1630.2(g)(1)(i). MSJ Opinion, R. 17, Page ID # 401.

For the second element of Bair's failure to accommodate claim, Bair was qualified to work as a glazier prior to his avascular necrosis flare-up in mid-2020, and after he recovered from his surgery. Id., Page ID # 409. This is shown by Bair's post-recovery work record, in heavy construction and then as a glazier for a different

---

[10] In support of full disposition by finding one element unmet without further analysis of the other elements, the Trial Court cited *Shupe v. Rocket Cos.*, which doesn't address any adverse employment action. 660 F. Supp. 3d 647, 670 (E.D. Mich. 2023).

company, Edwards Glass, doing the same work he was doing with Crystal Glass. Bair Transcript, R. 11-3, Page ID # 144-145, tr. pp. 181, 184-85.

Discarding the Trial Court's "adverse employment action" analysis, the only element of Bair's failure to accommodate claim in dispute is whether he was denied a reasonable accommodation. Bair asserts he was entitled to temporary unpaid time off as a reasonable accommodation to recover from his surgery. MSJ Response, R. 14, Page ID # 340. A temporary unpaid medical leave of absence has long been recognized as a reasonable accommodation required under the ADA. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781-83 (6th Cir. 1998); see also 29 C.F.R. App. § 1630 ("other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"). While such leave periods are not open-ended and vary depending on the individual situation of employee and employer, courts are clear that the ADA typically requires at least six months or even over a year of leave. *Cleveland v. Federal Express Corp.*, 83 Fed. App'x 74, 78–79 (6th Cir. 2003); *White v. Honda of America Mfg., Inc.*, 191 F. Supp. 2d 933, 951 (S.D. Ohio 2002).

Whether and how long an employer must provide unpaid medical leave as a reasonable accommodation depends what would constitute an undue hardship to the employer. *Cehrs*, 155 F.3d at 782. "If an employer cannot show that an accommodation unduly burdens it, then there is no reason to deny the employee the accommodation." *Id.* An undue hardship is "an action requiring significant difficulty

or expense." 42 U.S.C. § 12111(10)(A). An employer with greater ability to handle staffing needs while granting unpaid medical leave does not suffer an undue hardship from such accommodation. *Norris v. Allied-Sysco Food Services, Inc.*, 948 F. Supp. 1418, 1439-1440 (N.D. Cal. 1996), aff'd 191 F.3d 1043 (9th Cir. 1999), cert. denied 528 U.S. 1182 (2000).

In this case, Crystal Glass was highly capable of granting Bair unpaid medical leave as a reasonable accommodation. Such action would be far from an undue hardship, because Crystal Glass would have laid Bair off anyway. In the same time frame as Bair's surgery, Crystal Glass laid off *all* of its glaziers – 10 glaziers in June (the same month as Bair's layoff and surgery), with the eleventh on July 3 – due to business slowdowns and restrictions during the initial months of the COVID-19 pandemic. Layoff List, R. 11-14, Page ID # 312; MSJ, R. 11, Page ID # 69.

This period of business slowdown, where Bair and all other glaziers were already being laid off, was an ideal time to grant Bair an unpaid medical leave. While Crystal Glass began calling these laid off employees back in July and August 2020,[11] it soon ran out of employees to reinstate and began hiring new employees in September 2020. Employee List, R. 14-5, Page ID # 381-382. It hired a fabricator and glazier in September 2020. Id. It hired another new glazier in November 2020, two more in March 2021, two more later that year, and at least 13 more in 2022. Id.

---

[11] Layoff List, R. 11-14, Page ID #312.

18

Bair could have easily been brought back if Crystal Glass granted his reasonable accommodation. He healed from his surgery in October 2020 and began working a heavy lifting construction job in December 2020. Bair Transcript, R. 11-3, Page ID # 145, tr. p. 184. Crystal Glass could have brought him back to work in November 2020, the same time it instead hired a new glazier. Bair later went to work as a glazier for a different company in August 2021, making clear he was capable of returning to the industry. Id., Page ID # 145, tr. p. 185. Even with his longer-than-expected recovery time, thanks largely to Crystal Glass ceasing his health insurance so he couldn't afford physical therapy,[12] Bair was ready to work four months post-surgery, and was working heavy construction six months post-surgery. Id. This is well within or below the 6-12+ month minimum leave time that courts consider reasonable accommodations under the ADA. *Cleveland*, 83 Fed. App'x at 78–79; *White*, 191 F. Supp. 2d at 951; *Cehrs*, 155 F.3d at 781-83. Crystal Glass could have reasonably accommodated Bair's time off as an unpaid medical leave.

A final factor showing how unpaid medical leave would not have been an undue hardship is that Crystal Glass wasn't required to continue Bair's health insurance while he was on leave. The "ADA does not require maintenance of health insurance unless other employees receive health insurance during leave under the same circumstances." 29 C.F.R. § 825.702(b). Because Crystal Glass had never previously granted any ADA reasonable accommodation, there was no past practice

---

[12] Bair Transcript, R. 11-3, Page ID # 134, tr. pp. 140-41, 182.

that required it to provide Bair with health insurance during a medical leave. Solomon Transcript, R. 11-4, Page ID # 212, tr. p. 123; Gaines Transcript, r. 11-6, Page ID # 266, tr. pp. 85-6.

### 3. Bair Requested Leave as a Reasonable Accommodation

The Trial Court ruled that Crystal Glass had no obligation to grant Bair unpaid medical leave as a reasonable accommodation, and that Bair didn't even request such accommodation. According to the Trial Court (MSJ Opinion, R. 17, Page ID # 414):

> Bair was not requesting unpaid medical leave. Rather, he received the exact disability accommodation that he requested: a voluntary lay off, which would have qualified him for unemployment under then-existing law.[13]

This mischaracterizes the facts and the law. As already detailed, Bair asked for time off amidst Crystal Glass' mass layoffs during the early stages of the COVID-19 pandemic. Crystal Glass laid Bair off not only due to his disability and surgery, but

---

[13] The Trial Court considered it preclusive to obtaining a reasonable accommodation that Bair, after a long delay, received unemployment benefits for the time he was laid off. MSJ Opinion, R. 17, Page ID #414. The Trial Court cited Michigan unemployment law, M.C.L. 421.48(3), which states, "An individual shall not be considered to be unemployed during any leave of absence from work granted by an employer either at the request of the individual[.]" But the subsection also reads, "An individual shall neither be considered not unemployed nor on a leave of absence solely because the individual elects to be laid off […] if there is a temporary layoff because of lack of work and the employer has consented to the election." Bair was laid off not only due to his surgery, but because Crystal Glass had no work for him, and laid off Bair *along with the entire workforce*. Regardless, Michigan unemployment law doesn't supersede Bair's right to a reasonable accommodation. This is analogous to *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797-98 (1999) (ADA plaintiff's claims for Social Security disability benefits were not inconsistent with an ADA reasonable accommodation, because a disabled worker might be able to perform essential job functions with the accommodation).

because Crystal Glass had no work for him, and laid Bair off *along with the entire workforce* starting later that month. Layoff List, R. 11-14, Page ID # 312.

The Trial Court's attempt to draw a distinction between a "layoff" and reasonable accommodation cuts against the ADA. In *King v. Steward Trumbull Mem. Hosp., Inc.*, the Sixth Circuit held that an employee's vague request for leave under the Family and Medical Leave Act (for which she was ineligible), without specifying how much time off she needed, was sufficient to constitute a request for a reasonable accommodation under the ADA. 30 F.4th 551, 564-568 (6th Cir. 2022). The Court held (*Id.*, internal citation omitted):

> We have generally given plaintiffs some flexibility in how they request an accommodation. Just as an employee does not need to use "magic words" to inform her employer that she is disabled, the employee does not need to explicitly use the word "accommodation." […] Additionally, an employee's initial request does not need to identify the perfect accommodation from the start.

Although Bair didn't need to use any "magic words," the specificity of Bair's request for time off as a reasonable accommodation far exceeds that considered acceptable in *King. Id.* Bair first texted Crystal Glass' scheduler Gaines and company owner Solomon on May 19, 2020 to notify them of his hip condition, that he was seeing a doctor, and that he was having difficulty climbing scaffolding. Bair-Solomon Text, R. 11-7, Page ID # 292; Bair-Gaines Texts, R. 11-8, Page ID # 294-295. On May 31, he texted Solomon that he had emergency hip resurfacing surgery scheduled on June 16, and texted, "I need to speak with you about going on short term

21

disability. This procedure is not so bad and [the doctor] said I should be down for 6 weeks with returning to light duty after that." Bair-Solomon Texts, R. 14-2, Page ID # 356. Bair made very clear he needed time off for his disability, and intended to return to work when he recovered. Id. The next day, Bair texted Solomon his medical report and asked to be laid off *for the surgery*, reiterating the layoff was temporary because "I need to get better and back to work." Bair-Solomon Texts, R. 14-2, Page ID # 357.

The Trial Court's claim that Bair "received the exact disability accommodation that he requested: a voluntary lay off" mischaracterizes not only the facts, but also the concept of a reasonable accommodation under the ADA, as an action taken to accommodate an employee who wants to continue working. MSJ Opinion, R. 17, Page ID # 414. A permanent layoff is not a reasonable accommodation under the ADA because a laid off employee would no longer even attempt to perform the essential job functions. 42 U.S.C. 12111(8).

### 4. Crystal Glass Failed to Grant Bair's Reasonable Accommodation and Failed to Engage in the Interactive Process

Upon learning of Bair's need for a reasonable accommodation, Crystal Glass was required to engage in a good faith interactive process to determine the prospects for medical leave as a reasonable accommodation. *Nance v. Goodyear Tire & Rubber Co.,* 527 F.3d 539, 556 (6th Cir. 2008). Per 29 C.F.R. § 1630.2(o)(3):

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations

resulting from the disability and potential reasonable accommodations that could overcome those limitations.

Crystal Glass never engaged in the interactive process, didn't know of its responsibility to engage in the interactive process, and didn't know that unpaid time off was a reasonable accommodation under the ADA.[14] Solomon Transcript, R. 11-4, Page ID # 211, tr. pp. 117-119. Rather than engage in an interactive process, Crystal Glass laid off Bair on June 4, seemingly in rough accordance with his request for medical leave. Text messages, R. 14-2 Page ID # 359. However, weeks later when Bair notified Crystal Glass of his progress post-surgery, Solomon texted him without warning that they probably wouldn't hire him back. Ex. 2, Page ID # 359. Neither this message chain nor the company's detailed July 8 email reiterating its position ever mentioned the prospect for Bair to return to work for any reason, with no mention of a doctor's note. Bair-Solomon Texts, R. 14-2, Page ID # 359; Ex. 4, CGI p. 143.

When the interactive process "fails to lead to [a] reasonable accommodation [...], responsibility will lie with the party that caused the breakdown." *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014) (internal citation omitted). "When a party obstructs the process or otherwise fails to participate in good faith, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Kleiber*, 485 F.3d at 871 (quotation marks omitted).

---

[14] Lack of knowledge of the legal requirement to offer time off as a reasonable accommodation is indicative of a violation of that requirement. *Ricco v. United States Postal Service*, EEOC Appeal No. 07A10007 (2002) at *12.

Crystal Glass' surprise unilateral announcement that Bair wouldn't likely have a job with the company, with no interactive discussion or qualification that they might consider him if he presents a doctor's note, shows lack of good faith.[15] Crystal Glass' bad faith is especially apparent because, on **July 7 – the day before** Solomon's email to Bair claiming "our work has slowed down significantly due to a slow reopening and we likely won't have work for you anytime in the foreseeable future,"[16] **Crystal Glass already began bringing back its laid off glazier**, starting with Mike Griffey. Layoff List, R. 11-14, Page ID # 312. On July 13 – five days after Solomon's email to Bair – Crystal Glass reinstated another laid off glazier, Robert Washington. Id. On July 20, Crystal Glass reinstated four more laid off glaziers, and another on August 3. Id. Other than Bair, the only glaziers laid off in June and July who did not return to work voluntarily declined to return when Crystal Glass asked them. Id.; Solomon Transcript, R. 11-4, Page ID # 206, tr. pp. 98-9.

After running out of laid off glaziers (besides Bair) to reinstated, Crystal Glass began hiring new employees. On September 14, 2020, it hired glass fabricator Roger Grinage. Employee List, R. 14-5, Page ID # 382. It hired glaziers Nicholas Lacombe on September 15 and Jason Nardozzi on November 23. Id., CGI p. 202. It hired glaziers Christian Orozco and Jose Orozco-Torres on March 15, 2021, Barry Connor

---

[15] This contrasts with *Bennett v. Hurley Med. Ctr.*, where an employer email withdrawing a reasonable accommodation noted it "remain[ed] open to continue dialogue on th[e] matter." 2023 U.S. Dist. LEXIS 9399, at *41-42 (E.D. Mich., Jan. 19, 2023).

[16] Layoff List, R. 11-14, Page ID # 312; Solomon Email, R. 14-4, Page ID # 379.

on August 31, and Cayman Rose on December 27. Id., CGI pp. 202-03. However, Crystal Glass never contacted Bair to see if he could return to work. Solomon Transcript, R. 11-4, Page ID # 207, tr. p. 102. They skipped over Bair not because he lacked a doctor's note, but because Solomon disapproved of Bair's opposition to being told he probably wouldn't have a job. Solomon Transcript, R. 11-4, Page ID # 201-203, 208, pp. 79-85, 106. According to Gaines, "at the point where that [Solomon's July 8] email was sent, things had kind of taken a hostile turn, so I think it was a different set of eyes on the situation when it came to Anthony specifically." Id., Page ID # 201, p. 79. Gaines further testified, "from the point where James sent that email to Anthony, he fell off my radar." Id., Page ID # 203, p. 85.

Crystal Glass telling Bair that "our work has slowed down significantly due to a slow reopening and we likely won't have work for you anytime in the foreseeable future"[17] while they were **simultaneously reinstating employees** shows obvious bad faith, in violation of the obligation to grant time off as a reasonable accommodation and to engage in the interactive process. *King*, 30 F.4th at 564-568. Crystal Glass' pretexts for failing to offer Bair time off as a reasonable reasonable accommodation are unavailing and fail to rebut Bair's prima facie case that he proposed a reasonable accommodation. *Brenneman v. Medcentral Health Sys.,* 366 F.2d 412, 417-18 (6th Cir. 2004). The Trial Court sidesteps Crystal Glass' bad faith, and

---

[17] Solomon Email, R. 14-4, Page ID # 378-379.

instead blames Bair for failing to seek rehire when he recovered,[18] attempting to reframe the issue as a "failure to hire" claim (which Bair never brought). MSJ, R. 17, Page ID # 415. Even mis-framed as a "failure to hire" claim, an employee wrongly terminated while on medical leave is not required to reapply to prove wrongful denial of additional medical leave as an accommodation. *Bateman v. Project Hospitality, Inc*, 2009 U.S. Dist. LEXIS 92411 at *7 (EDNY, Sep. 30, 2009); *George v. Util. Trailers of Indianapolis, Inc.*, 2014 U.S. Dist. LEXIS 154860 (S.D. Ind., Oct. 31, 2014).

The Trial Court also improperly applied the "adverse employment action" analysis to find Crystal Glass' "statement of probability" that it wouldn't hire him was not an adverse employment action – again, with no analysis of the bad faith pretext of its statement. MSJ, R. 17, Page ID # 415. The Trial Court's improper analysis ignores the key question – whether Crystal Glass, in telling Bair he likely had no future with the company while he was expecting to return to work upon recovery, is the party responsible for causing the breakdown in the interactive process to obtain unpaid time off as a reasonable accommodation. *Rorrer*, 743 F.3d at 1040. "When a party obstructs the process or otherwise fails to participate in good faith, courts should attempt to isolate the cause of the breakdown and then assign

---

[18] When Bair recovered months later, he believed it would be useless to present Crystal Glass with a doctor's note because, as far as he understood, they already fired him when they told him he likely had no future with the company. Bair Transcript, R. 11-3, Page ID #136, tr. p. 149.

responsibility." *Kleiber,* 485 F.3d at 871 (quotation marks omitted). Crystal Glass – not Bair – is responsible for causing that breakdown.

## C. CRYSTAL GLASS DISCRIMINATED AGAINST BAIR

In addition to Crystal Glass' failure to reasonably accommodate Bair, it also committed general ADA disability discrimination. Per 42 U.S.C. 12112(a):

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Bair must show (1) he was disabled; (2) he was otherwise qualified for the position, with or without accommodation, (3) he suffered an adverse employment action; (4) Crystal Glass knew or had reason to know of his disability; and (5) the position remained open or he was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011).

Elements (1), (2), (4), and (5) have already been thoroughly analyzed and aren't in serious dispute. Bair's avascular necrosis rendered him disabled, his work history before surgery and post-recovery shows he was qualified to be a glazier, Crystal Glass knew of his disability, and Crystal Glass had open glazier positions it could have given Bair but instead gave other employees (both reinstated and newly hired). The only element in dispute is whether Bair suffered an "adverse employment action."

The Trial Court granted summary judgment on March 31, 2024, 17 days before[19] the landmark U.S. Supreme Court case *Muldrow v. City of St. Louis* lowered the artificially high bar to show an adverse employment action. 144 S. Ct. 967, 972 (2024).[20] In *Muldrow*, the Court held that a plaintiff need only show "some injury" by an adverse employment action, not the previous improperly high "materially significant disadvantage" or "significant harm" standard. *Id.* at 970, 976. An adverse employment action that is not formally disciplinary in nature, like the transfer at issue in *Muldrow*, can be "some injury" and thus an adverse employment action. *Id.* at 970. In reviewing the statutory language, the Court found (*Id.*, internal citation omitted):

> "Discriminate against" means treat worse, here based on sex. Neither that phrase nor any other establishes an elevated threshold of harm. To demand "significance" is to add words to the statute Congress enacted. It is to impose a new requirement […] so that the law as applied demands something more than the law as written. […]

In showing an adverse employment action, "the plaintiff's burden at the prima facie stage is minimal and easily met. Once a plaintiff establishes a prima facie case,

---

[19] Consistent with standard civil jurisprudence, *Muldrow* retroactively applies to adverse employment actions in this case. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.")

[20] *Muldrow* addressed an "adverse employment action" under Title VII of the Civil Rights Act, which contains the same relevant statutory language "discriminate against" and the same standards for an "adverse employment action" under the ADA, and is thus binding to this case. *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009); *Moody v. MidMichigan Med Ctr-Midland*, 2022 U.S. Dist. LEXIS 130822, at *6 (E.D. Mich., July 22, 2022) (comparing ADA and Title VII adverse employment actions in the Sixth Circuit).

the defendant has a burden of production to articulate a nondiscriminatory reason for its action." *Wyatt v. Nissan North America, Inc.*, 999 F3d 400, 419 (6th Cir. 2021) (internal citation removed). Bair makes a prima facie case that he suffered "some injury" when Crystal Glass improperly told him he likely couldn't return to the company after he recovered from surgery. Crystal Glass' action itself likely constitutes a termination,[21] but even if not, Bair meets the "minimal standard" under *Wyatt* and *Muldrow* that he was "treated worse" based on his disability because he was less likely to be reinstated than all other employees Crystal Glass reinstated and hired. Crystal Glass fails to meet its burden to articulate a nondiscriminatory reason for telling Bair they had no work for him while simultaneously reinstating other laid off employees, and then hiring new employees. Crystal Glass cannot offer "what appears to be a legitimate explanation" for this inconsistency. *Cehrs*, 155 F.3d at 779. To find that this action doesn't constitute an adverse employment action sets a dangerous precedent that allows companies to poison the atmosphere by pushing an employee on leave out of employment due to bad faith claims that their protected leave is actually unprotected.

### D. CRYSTAL GLASS RETALIATED AGAINST BAIR

The ADA states, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter[.]" 42

---

[21] *Terre v. Hopson*, 708 F. App'x 221, 227 (6th Cir. 2017) (termination occurring while an employee is on leave may "nullify[]" the accommodation of medical leave).

U.S.C § 12203; see also 29 C.F.R. § 1630.12. To show retaliation, Bair must show (1) he engaged in ADA-protected activity; (2) Crystal Glass knew of this protected exercise of rights; (3) Crystal Glass took adverse employment action against him; and (4) there is a causal connection between the protected activity and the adverse employment action. *Blizzard v. Marion Tech. College*, 698 F.3d 275, 288 (6th Cir. 2012).

Bair meets the first and second elements, as he engaged in the ADA-protected activity of seeking a reasonable accommodation. As discussed in the discrimination section under *Muldrow*, Bair meets the third element of suffering an adverse employment action when he was "treated worse" and effectively terminated by Crystal Glass, when they improperly told him he likely couldn't return to the company after he recovered from surgery, while Crystal Glass simultaneously reinstated and then hired other employees.

Bair meets the fourth element because a causal connection exists between his inconvenient requests for disability-related accommodations and the adverse employment action. Proximity in time between the protected activity and the adverse employment action is a major factor to show retaliation. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Bair began his unpaid leave on June 4 to isolate in preparation for his surgery. Bair-Solomon Texts, R. 14-2, Page ID # 359. On June 30, Crystal Glass informed him without prior warning that his leave would likely be permanent. Id. This

timing is suspicious and pretextual, as Bair has repeatedly shown the untruthfulness of Crystal Glass' claim that they had no more work.

Another strong causal connection exists between Bair's protected assertion of rights, including mentioning that he was talking with attorneys about his rights and a case for unlawful termination, and Crystal Glass' refusal to consider reinstating Bair. An employee cannot suffer retaliation for contacting an attorney over a suspected violation of their rights or for considering legal action. *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001); *Conetta v. National Hair Care Ctrs., Inc.*, 236 F.3d 67, 76 (1st Cir. 2001); *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002); *Sauers v. Salt Lake Cty.*, 1 F.3d 1122, 1128 (10th Cir. 1993); *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir. 1997); *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 fn. 3 (9th Cir. 1982).

Crystal Glass admitted it refused to consider Bair for employment after his medical leave due to his opposition to the denial of medical leave time, in which he referenced talking with attorneys. When Solomon texted Bair on June 30, "We are slow now and probably won't be able to hire you back," Bair responded with the understandable shock of someone in economic hardship recovering from a serious surgery who suddenly had the security of employment taken away from him. On July 3, he texted Solomon, "All I ever wanted was to get better and make an honest paycheck," and noted how he was talking with attorneys about the prospects of legal

action, and that his attorney "finds a very valid case for unlawful termination[.]" Id., CGI p. 163; Bair-Solomon Text, R. 11-16, Page ID # 318.

Solomon testified, "From his reaction, I assumed he wouldn't want to work here." Solomon Transcript, R. 11-4, Page ID # 208, tr. p. 106. Solomon told Gaines about the interaction. Gaines Transcript, r. 11-6, Page ID # 265, tr. p. 80. When Crystal Glass began calling laid off employees back to work and hiring new employees, they skipped over Bair – not because of the lack of a doctor's note – but because Solomon disapproved of Bair's opposition to being told he probably wouldn't have a job. Id., Page ID # 265-266, tr. pp. 79-85. According to Gaines, "at the point where that [Solomon's July 8] email was sent, things had kind of taken a hostile turn, so I think it was a different set of eyes on the situation when it came to Anthony specifically." Id., Page ID # 265, tr. p. 79. Gaines further testified that, "from the point where James sent that email to Anthony, he fell off my radar." Id., Page ID # 266, tr. p. 85.

## CONCLUSION

Plaintiff-Appellant respectfully requests this Honorable Court reverse on all counts the Trial Court's granting of summary judgment in favor of Defendant-Appellee, and order all other such appropriate relief.

Respectfully submitted,

GREGORY, MOORE, BROOKS, CLARK,
    & HELTON, P.C.

/s/ Matthew J. Clark
Matthew J. Clark (P76690)
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams, Ste. 300
Detroit, MI 48226
Telephone: 313-964-5600
Facsimile: 313-964-2125
Matt@unionlaw.net

June 25, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2024, a copy of the foregoing BRIEF FOR APPELLANT was filed electronically with the Clerk of the Court using the CM/ECF system and served upon counsel for Defendant-Appellee.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this brief is proportionally spaced, 14-point Garamond font. Per Microsoft Word Processing program software, the brief contains 8,893 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

　　　　*/s/ Matthew J. Clark*　　　　　　　　June 26, 2024
　　　　(Signature of Counsel)　　　　　　　　　　(Date)

34

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Doc. No. | Date Filed | Description | Page ID # |
|---|---|---|---|
| 1 | 12/28/2021 | Complaint | 1-8 |
| 11 | 3/30/2023 | Motion for Summary Judgment<br>- Ex. 3<br>- Ex. 4<br>- Ex. 5<br>- Ex. 6<br>- Ex. 7<br>- Ex. 8<br>- Ex. 14<br>- Ex. 16 | 52-89<br>134, 136, 140-141, 144-145<br>186, 200-208, 210-213<br>242<br>251, 257, 260, 265-266<br>292<br>294-295<br>312<br>316-318 |
| 14 | 4/20/2023 | Motion for Summary Judgment Response<br>- Ex. 1<br>- Ex. 2<br>- Ex. 3<br>- Ex. 4<br>- Ex. 5 | 323-351<br>353-354<br>356-357, 359<br>363-376<br>378-379<br>381-382 |
| 16 | 5/11/2023 | Motion for Summary Judgment Reply | 392-399 |
| 17 | 3/31/2024 | Summary Judgment Opinion and Order | 400-421 |
| 18 | 3/31/2024 | Judgment | 422-423 |
| 19 | 4/29/2024 | Notice of Appeal | 424 |